UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KRISTY L. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:17cv5 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §1383. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since September 25, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD) and degenerative disc disease of the cervical and lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry up to 50 pounds occasionally, 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant is limited to frequent but not constant exposure to humidity and wetness, as well as environments involving dust, odors, fumes or other pulmonary irritants (20 CFR 404.1567(c) and 416.967 (c)).

6. The claimant is capable of performing past relevant work as a product assembler and machine tender. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 25, 2013, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 21- 27).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on August 11, 2017. On November 17, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the

ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff filed her application for disability benefits in October 2013, alleging disability beginning September 25, 2013 (Tr. 283-89). Plaintiff's applications were denied initially and upon reconsideration, and Plaintiff requested a hearing in front of an ALJ (Tr. 189-90). On September 9, 2015, the ALJ held a hearing at which Plaintiff testified (Tr. 34-124). On November 25, 2015, the ALJ issued an unfavorable decision finding Plaintiff was not disabled . (Tr. 19-33). On November 9, 2016, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 1-7).

Plaintiff was born in 1958 and was 55 years old as of her alleged onset date. She has

worked as a product assembler and machine tender.

As noted, the ALJ found that Plaintiff had COPD, cervical spine degenerative disc disease, and lumbar spine degenerative disc disease. Plaintiff also claims that she has cervical facet disease, cervical radiculopathy and cervical nerve root disorder. Plaintiff states she also experienced range of motion deficits in the cervical spine, bilateral carpal tunnel syndrome, range of motion deficits in the shoulders, degenerative changes of the thoracic spine, range of motion deficits in the knees, arthralgia, chronic pain syndrome, osteopenia, right hip pain, and an antalgic gait.

Plaintiff states that in conjunction with her COPD she has pulmonary nodules, centrilobular emphysema, and biapical pleural scarring. Plaintiff further claims that she has asthma and bronchitis.

At the September 9, 2015 hearing, Plaintiff testified that she had to stop working due to fatigue associated with her breathing problems and because she began to have trouble with lifting (Tr. 54). Plaintiff said that her chronic obstructive pulmonary disease (COPD) and asthma caused her daily breathing problems (Tr. 60). As a result, she self-administered a nebulizer breathing treatment every day for 30 minutes in the morning, and one puff of Advair twice a day (Tr. 60-61). Plaintiff testified after her nebulizer treatments, she breathed better, and could "do things better" (Tr. 62). Plaintiff also testified that she experienced two-hour headaches three times a week for about the past year; that she successfully treated the headaches with Ibuprofen (and sometimes Excedrin Migraine) which provided relief; she had not told her treatment providers about her headaches; and, she rated her headache pain as five on a scale of one to ten (Tr. 62-65). Plaintiff testified that she experienced frequent urination and pressure from her prolapsed uterus,

but had never received treatment (Tr. 66-68). She said that she had issues with her spine for a "long time" (Tr. 69-73). She also testified that she experienced sore wrists and hand cramps when she performed activities such as writing, holding a knife, chopping things, and washing her hair due to carpal tunnel syndrome (Tr. 74-76).

 Plaintiff testified that her alleged ailments affected her abilities. For example, she said that she could only walk for about two blocks before she experienced low back pain and shortness of breath, and she would need to sit down for 15 minutes before she could get back up and walk again (Tr. 76-78). Plaintiff testified that she could stand for 30 minutes before she experienced low back pain, neck pain, and fatigue, and she would need to sit down for 30 minutes before she could stand again (Tr. 78-79). She said that she could sit for 30 minutes before she experienced neck stiffness and low back pain, and would need to stand and walk for 30 minutes before she could sit again and feel relief from her pain (Tr. 79-80). Plaintiff testified that she recently received two prescription medications to relieve her back pain, but before then, she relieved the pain with Ibuprofen and Tylenol; she also said that she had stopped taking her prescription pain medications (Tr. 81-82). Plaintiff testified that she could lift a half gallon of milk, had some issues with pulling (e.g., vacuum cleaning), could grip things such as coffee cups, pencils, and a drinking glass, turn a doorknob, pinch things, and tie her shoes (Tr. 82-85, 87). She said she experienced discomfort reaching her arms out in front of her body, but could lift her arms to her shoulders (Tr. 85-87). Plaintiff testified that she could bend over, that she had not "squatted for a while," and that it would be challenging to climb stairs (Tr. 88). Plaintiff testified that she had a driver's license with no restrictions (e.g., she did not require glasses), was able to drive, and did, in fact, drive distances (Tr. 42-43). She said that her daughter drove her for 45 minutes to attend

6

the hearing (Tr. 43). Plaintiff testified that she had a GED, could read and write, add and subtract, and manage her own finances (Tr. 44-45).

In a typical day, Plaintiff testified that she wakes up with a sore back, and administered her nebulizer breathing treatment first thing in the morning (Tr. 89). Afterwards, she would make a pot of coffee, relax for 15 to 20 minutes, shower, brush her teeth, use the bathroom, have breakfast, and a cup of coffee (Tr. 89-90). Plaintiff testified that she had no problems showering or dressing herself (Tr. 90). Next, she would say prayers, stretch, perform other therapeutic exercises her doctor recommended, and do housework (Tr. 90). Plaintiff said she was able to cook throughout the day using a stove (e.g., eggs and toast, casseroles, baking cookies) (Tr. 91-92, 96). She testified that she grocery shopped once a week with no problems; did laundry up to twice a week with no problems; vacuumed once a week (although she said it was a challenge); dusted her home once a week; washed and dried dishes by hand (sometimes her hands cramped); made the beds; and, mowed the lawn at her house (she resided in a home, not an apartment) (Tr. 92-93). Plaintiff testified that she read the Bible every day, perused cookbooks and recipes, and played board games (Aggravation or Yatzee) with her grandchildren when they visited (Tr. 95). Although she said she had some difficulty getting comfortable at night, she testified that she was able to get at least eight hours of sleep a night (Tr. 96-97). She did not need to take naps daily, but she tried to rest every day for about an hour (Tr. 98).

Micha Daoud, a vocational expert (VE), testified at the administrative hearing (Tr. 104-107, 109, 115-122). The VE highlighted Plaintiff's past work as a home healthcare giver (medium; semiskilled; SVP-3; DOT 354.377-014), and noted that this work was described in the record as "performed at very heavy" (Tr. 116). The VE also highlighted Plaintiff's past work as a

7

packager (medium; semiskilled; SVP-3; DOT 920.587-018), as a product assembler (medium; semiskilled; SVP-3; DOT 706.684-018), and as a machine tender (medium; semiskilled; DOT 619.685-062 (Tr. 116-118).

The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education and work experience who is capable of work at the medium exertional range and frequent exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants (Tr. 119). The ALJ asked the VE whether this hypothetical individual could perform Plaintiff's past relevant work (Tr. 120). The VE responded that the individual could perform the machine tender and the product assembler jobs, and that the packager and the home healthcare giver jobs would be eliminated (Tr. 120).

Next, the ALJ asked the VE to consider a second hypothetical individual with Plaintiff's age, education and work experience who is capable of work at the medium exertional range, except the individual would alternate to standing for 15 minutes after every 30 minutes of sitting; alternate to sitting for 15 minutes after every 30 minutes of sitting; alternate to sitting for 15 minutes after every 30 minutes of walking; frequently reach overhead right and left; frequently do all reaching both right and left; frequently handle right and left; frequently finger right and left; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently stoop, kneel, crouch and crawl; and frequently be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat (Tr. 120-121). The VE responded that the second hypothetical individual could not perform Plaintiff's past work, or any other work (Tr. 121). The ALJ asked the VE to consider a third hypothetical individual who was restricted to light work, and asked whether there were any skills this individual could obtain from Plaintiff's past

8

relevant work that would transfer to light work (Tr. 121-122). The VE responded no (Tr. 122). Plaintiff asked the VE there was any medium work that would not involve frequent cervical extension, rotation, or flexion (Tr. 122). The VE responded that what Plaintiff described was a person who essentially had no movement of the neck whatsoever (e.g., the individual is in a neck collar), and there would be no jobs available. *Id.* The Plaintiff asked the VE about an employer's tolerance for absences and breaks. *Id.* The VE responded that an employer would tolerate an individual missing one day of work per month, and that an employer would allow a break every two hours – 15 minutes in the morning, a half hour for lunch, and 15 minutes in the afternoon (Tr. 122). The VE also testified that an employer would expect an individual to stay on task at least 85% of the workday. *Id.*

In support of remand or reversal, Plaintiff first argues that her pulmonary function test FEV1 scores established that she met or equaled Listing 3.02A. Plaintiff claims that the ALJ failed to analyze listing 3.02A properly.

The Listings consist of impairments, organized by major body systems, which are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy

the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531.

An impairment meets the severity of Listing 3.02 when there is proof of a chronic obstructive pulmonary disease with correspondingly low FEV levels, FVC levels, or single breath DLCO levels less than 10.5 ml or less than 40 percent of the predicted normal value. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.02 "Chronic Pulmonary Insufficiency." Alternately, a claimant must exhibit correspondingly low arterial blood gas values of PO2 and simultaneously determined PCO2 measurements, based on the minimum values set forth in the listing. *Id*.

In the present case, the ALJ found that the medical evidence showed that Plaintiff did not meet or medically equal Listing 3.02. The ALJ stated that at the time of filing, Plaintiff weighed approximately 138 pounds, and stood 5'4" tall (64 inches) (Tr. 23, 277). The ALJ opined that Dr. Miller's admission did not support a disability finding (Tr. 24, 337). The ALJ noted that on December 2, 2013, Plaintiff had a consultative examination with Dr. Abdali Jan, where she admitted to "feeling well with minor complaints, [having] good energy, and [is] sleeping well" (Tr. 24, 340). The ALJ claimed that a few days later, on December 13, 2013, Plaintiff underwent pulmonary function testing and her FEV1 post-spirometry reading was low, but still above the minimum threshold for Listing 3.02 (Tr. 24, 56, 344-346).

As the Plaintiff points out, the ALJ's analysis of Listing 302A was very cursory and perfunctory. The ALJ did not appear to evaluate the medical evidence and did not discuss the various levels that qualifies a person under Listing 302A. *See Kastner v. Astrue*, 697 F.3d 642,

10

647-48 (7th Cir. 2012); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)(reversing because ALJ's analysis of the pertinent Listing was "devoid of any analysis that would enable meaningful judicial review."). As Plaintiff points out in her brief, Plaintiff seemingly meets Listing 3.02A. Plaintiff's FEV1 scores on December 13, 2013, were 1.28, 1.19, 1.09, 1.06, .98, and 1.01. Thus, five out of six scores are under 1.25, the 302A Listing threshold for a person of Plaintiff's height. It is unclear to this court why the ALJ did not accept this testing as meeting the Listing. Accordingly, this Court remands the issue of Listing 3.02A for a more detailed analysis, as the current analysis is too limited to permit proper review by this Court.

Next, Plaintiff alleges that the ALJ used a backward, boilerplate analysis in determining Plaintiff's RFC and also failed to incorporate the limiting effects of Plaintiff's cervical spine impairments. An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe. 20 C.F.R. § 404.1545(a). Moreover, an ALJ may not ignore entire lines of evidence. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir.2008).

In the present case, Plaintiff contends that the ALJ failed to account for limitations in the RFC involving head and neck movements that were supported by evidence of her neck pain, cervical facet disease, cervical radiculopathy, cervical nerve root disorder and cervical spine range of motion deficits. However, the record shows that the ALJ discussed the evidence and opinions that supported his RFC finding (Tr. 23-27). For example, despite allegations of back pain, the ALJ noted that Plaintiff admitted that she was able to work despite her back pain, and engaged in activities well beyond the threshold of the RFC as recently as 2015 (Tr. 24, 45-49). The ALJ noted that at Plaintiff's December 2013 consultative examination with Dr. Jan, Plaintiff had

stable gait, full range of motion, only slightly diminished (4/5) muscle strength, and normal walking in tandem and on heels and toes (Tr. 24, 340-342). The ALJ also noted that Plaintiff had no musculoskeletal complaints of pain, swelling, or dysfunction in May 2014 (Tr. 25, 382-389). The ALJ also noted that in May 2015, apart from some tenderness and decreased range of motion in her lumbar spine, Plaintiff's straight leg raise testing was negative, her reflexes and strength were normal in both legs, and physical examination of her cervical and thoracic spine was unremarkable (Tr. 25, 464-473). Plaintiff was advised to engage in back exercises twice daily, and the ALJ noted that the fact that her primary physician would recommend physically exertional exercises detracted from Plaintiff's allegations that she was severely disabled and incapable of even sedentary exertional actions. *Id.*

The ALJ noted that Plaintiff's June 2015 back x-rays affirmed degenerative disc disease, for which she was prescribed Relafen (Tr. 25, 499-500). The ALJ stated that Plaintiff reported to Parkview Health for pain management in August 2015, and physical findings affirmed that aside from some tenderness in her neck and lumbar spine, she was not in any distress, and straight leg raise testing was negative (Tr. 25-26, 479-484). The ALJ also noted that her August 2015 cervical MRI showed normal vertebral height and alignment, with only mild disc bulging at C3-C4 (Tr. 26, 533-534). The ALJ noted that since the MRI imaging showed some degeneration, the RFC reflected reasonable considerations based on those findings (Tr. 26). Last, the ALJ gave great weight to the opinions of state agency physicians Dr. J. Sands and Dr. B. Whitley that Plaintiff could engage in medium exertional work with reasonable environmental and postural considerations based on the objective record and consistent with the overall treatment notes, which reflected very mild degenerative disease (Tr. 26).

With respect to the boilerplate language, it is the use of the boilerplate without any other explanation that the Seventh Circuit has criticized: "The ALJ declared this testimony 'not entirely credible,' but we have said already that this unexplained finding is unsustainable." *Punzio*, 630 F.3d 704 at 709. And in a recent unpublished decision, the Court reiterated that "[w]e have derided this sort of boilerplate as inadequate, by itself, to support a credibility finding;" *Richison v. Astrue*, No. 11-2274, 2012 WL 377674, at *3 (7th Cir. Feb 7, 2012( The Court went on to note that "in this case the ALJ said more," and affirmed the ALJ's decision. *Id*. Thus, the Seventh Circuit has found that, although "[t]he decision also contains a considerable amount of boilerplate language and recitations . . . the ALJ adequately evaluated [the claimant's] credibility, and we see no reason to reverse." *Shideler v. Astrue*, 688 F.3d 308, 312 (7th Cir. 2012).

Plaintiff also maintains that the ALJ's credibility analysis is illogical. As part of his RFC determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible (Tr. 26). "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). In the present case, the ALJ's evaluation of Plaintiff's symptoms meets this standard.

Pursuant to SSR 96-7p, the ALJ considered multiple factors in evaluating Plaintiff's symptoms (Tr. 30-31). SSR 96-7p, 61 Fed. Reg. 34,483 (1996), superseded by SSR 16-3p, effective March 28, 2016. In particular, the ALJ considered the following factors: Plaintiff's activities of daily living; the objective medical evidence, including exam findings; Plaintiff's

13

medications and their effectiveness; Plaintiff's treatment history; Plaintiff's work history; and the record medical opinions (Tr. 23-27).

Regarding Plaintiff's activities of daily living, the ALJ considered that Plaintiff was able to independently bathe and groom herself, button buttons, tie shoes, drive a car, grocery shop, prepare meals, perform housework, and mow the lawn (Tr. 23-24, 89-93). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ also considered Plaintiff's treatment history and records, which indicated that her respiratory issues were very well-controlled with medication and that her degenerative disc disease was very mild in nature. 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Plaintiff argues that the ALJ should have taken into consideration her "excellent work history" when making his credibility determination. While work history may be a consideration, it does not negate the other factors that the ALJ discussed is supported by substantial evidence.

Accordingly, this case will be remanded solely on the issues surrounding the analysis of Listing 302A, as discussed above.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: December 21, 2017.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court